**COMBINED INSURANCE COMPANY OF AMERICA, Plaintiff–Appellant,**

v.

**CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, Defendant–Appellee.**

No. 02–9089.

United States Court of Appeals, Second Circuit.

Aug. 22, 2003.

Carter G. Phillips (Joseph R. Palmore, Andrew W. Stern, Daniel A. Goldschmidt, Holly A. Harrison, on the brief), Sidley Austin Brown & Wood LLP, Washington, DC, for Plaintiff–Appellant.

Lawrence W. Pollack (Geoffrey H. Coll, on the brief), LeBoeuf, Lamb, Greene & MacRae, LLP, New York, NY, for Defendant–Appellee.

PRESENT: STRAUB, KATZMANN, and RAGGI, Circuit Judges.

## SUMMARY ORDER

Among the thousands of individuals who died or were injured as a result of the terrorist attacks of September 11, 2001, approximately 176 were employees working in the 2 World Trade Center office of Aon Corporation ("Aon"). On that date, all of those employees were insured under a group accidental death and dismemberment policy ("the Policy") issued to Aon by Plaintiff–Appellant Combined Insurance Company of America ("Combined"). One provision in the Policy provided coverage for losses suffered "because of an Act of Terrorism," that is, "any clandestine use of violence by an individual terrorist or terrorist group to coerce or intimidate the civilian population to achieve a political, military, social, or religious goal." By November 13, 2001, when the instant action was initiated, 80 Aon employees or their beneficiaries had made claims under the Policy, and it appears that Combined had begun making payments as to those claims.

This lawsuit arises not from a dispute concerning the Policy itself, but from a dispute concerning the secondary agreement by Defendant–Appellee Certain Underwriters at Lloyd's, London ("Lloyd's") to provide Combined with reinsurance coverage in respect of the Policy ("the Reinsurance Contract"). Because Combined views the Reinsurance Contract as requiring Lloyd's to provide reimbursement for 100 percent of the losses incurred by Combined under the Policy, Combined filed a claim for such reimbursements in October 2001. However, Lloyd's refused to pay such reimbursements on the ground that the Reimbursement Contract covered only the losses incurred by Combined as to Aon employees who died or were injured "whilst on business travel."

Thus came about this breach of contract action initiated by Combined against Lloyd's in the United States District Court for the Southern District of New York (Richard Owen, *Judge*). Combined invoked as the sole basis for federal subject matter jurisdiction section 408(b)(3) of the Air Transportation Safety and System Stabilization Act of 2001, Pub.L. No. 107–42, 115 Stat. 230 (Sept. 22, 2001), which provides as follows:

> JURISDICTION.–The United States District Court for the Southern District of New York shall have original and exclusive jurisdiction over all actions brought for any claim (including any claim for loss of property, personal injury, or death) resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001.

Having concluded that section 408(b)(3) was inapplicable to the particular circumstances of this case, the District Court dismissed the complaint pursuant to Fed. R.Civ.P. 12(b)(1). *See Combined Ins. Co. of Am. v. Certain Underwriters at Lloyd's, London,* No. 01 Civ. 10023(RO), 2002 WL 31056851 (S.D.N.Y. Sept.13, 2002). This timely appeal followed.

Our recent decision in *Canada Life Assurance Co. v. Converium Rückversicherung (Deutschland) AG,* No. 02–7590, 2003 WL 21524845 (2d Cir. July 8, 2003), makes clear that the judgment of the District Court should be affirmed. *Canada Life* involved a breach of contract action by a reinsurer against its retrocessionaire for reimbursements allegedly owed to the reinsurer pursuant to a retrocession agreement. Both in the instant appeal and *Canada Life,* the stream of reimbursements had been triggered by claims made under primary insurance policies by victims of the September 11th terrorist attacks. And both in the instant appeal and *Canada Life,* the plaintiff attempted to

invoke–and the district court rejected–section 408(b)(3) as a basis for federal subject matter jurisdiction.

We concluded in *Canada Life* that section 408(b)(3) "does not vest the Southern District of New York with jurisdiction over actions involving economic losses that would not have been suffered 'but for' the events of September 11 but otherwise involve no claim or defense raising an issue of law or fact involving those events." 335 F.3d 52, 2003 WL 21524845, at *7. We viewed this conclusion as being compelled by the language of the provision, canons of statutory construction, section 408(b)(3)'s legislative purpose, and the need for judicial efficiency.

Combined's lawsuit against Lloyd's does not satisfy the *Canada Life* test for federal subject matter jurisdiction under section 408(b)(3). This is because whether or not Lloyd's did in fact breach the Reinsurance Contract turns solely on the extent of reinsurance coverage contained within the provisions of the Reinsurance Contract–i.e., whether Lloyd's is liable for 100 percent of Combined's losses under the Policy or just those losses sustained by employees "on business travel," and if the latter is the case, whether evacuation of the workplace qualifies as being "on business travel." Resolution of these narrow issues of contract interpretation does not require the deciding court to refer to or choose among competing descriptions of the *events* of September 11th itself–a circumstance that otherwise creates the possibility of inconsistent and inefficient judgments across the spectrum of September 11th-related litigation, which is what section 408(b)(3) truly seeks to avoid. *See Canada Life,* 335 F.3d 52, 2003 WL 21524845, at *6.[1]

To the extent that Combined Insurance in its post-argument submission attempts to distinguish *Canada Life* on the ground that the suit in *Canada Life* was instituted after the November 2001 amendments to the Air Transportation Safety and System Stabilization Act of 2001, we note that the reasoning of *Canada Life* in no way depends on the existence or nonexistence of those amendments.

For the foregoing reasons, the judgment of the District Court is hereby AFFIRMED.

---

1. In *Canada Life* we held that: *"The* purpose of Section 408(b)(3), in vesting exclusive jurisdiction in the Southern District for 'all actions brought for any claim ... resulting from or relating to' the attacks, was to ensure consistency and efficiency in resolving the many expected actions arising from the events of September 11." 335 F.3d 52, 2003 WL 21524845, at *6 (emphasis added). In somewhat contradiction, we then suggested that section 408(b)(3) served several other goals in addition to consistency and inefficiency, including preventing "victims or their survivors" from being deprived of "any possibility of recovery when the limits of liability have been exhausted in other lawsuits." 335 F.3d 52, 2003 WL 21524845, at *6. It is thus unclear whether or not, under *Canada Life,* a complaint would fall within section 408(b)(3)'s jurisdictional grant if it did not implicate the need for consistency and efficiency across judgments but did otherwise implicate one of these suggested "other" goals.

We need not resolve this ambiguity because Combined's claim does not raise any of these suggested "other" goals. Although Combined argues that a bankrupt insurer could threaten the ability of victims of September 11 to recover fully their losses, in *Canada Life* we were skeptical that Congress intended to serve as a basis for jurisdiction under section 408(b)(3) the mere abstract possibility that a reinsurer's liability for September 11–related claims might contribute to its insolvency. 335 F.3d 52, 2003 WL 21524845, at *5. We see little reason now to distinguish claims by an insurer against its reinsurer from those between two reinsurers.